UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **American Immigrant Investor Alliance**<br>853 New Jersey Avenue SE<br>Unit 455<br>Washington, D.C. 20003-5079<br><br>Plaintiff,<br><br>v.<br><br>**United States Citizenship and Immigration Services**<br>   5900 Capital Gateway Drive<br>   Mailstop 2120<br>   Camp Springs, MD 20588-0009<br><br>Defendant. | **COMPLAINT**<br><br>Case No.: 1:24-cv-170 |

## COMPLAINT

There is a "persistent lack of clarity in USCIS's official disclosures about the EB-5 program…" *Da Costa v. Immigr. Inv. Program Office*, 80 F.4th 330, 346 (D.C. Cir. 2023). There is no excuse for the USCIS' (also referred to as the "Agency") continued lack of communication and information vital to assist immigrants when making one of the most important decisions of their lives. Notwithstanding this obfuscation, Plaintiff, a Washington D.C.-based 501(c)(4) non-profit established to inform, educate, and advocate on behalf of all EB-5 investors from around the world, continues its efforts to capture vital statistics from the Agency through the *Freedom of Information Act* ("FOIA"). Notwithstanding the clear requirements of FOIA, the Agency continues to ignore the law.

Indeed, Plaintiff filed a similar FOIA request seeking information regarding EB-5 petition volume and was forced to litigate the Agency's unlawful delay. *See AIIA v. USCIS*, 1:23-cv-

02066-CKK, ECF Doc. No 1 (Jul 18, 2023) (the "Initial Litigation").  Only after the Initial Litigation did the Agency provide the requested data. This lawsuit involves a similar request which has, unfortunately, faced a similar unlawful delay. Accordingly, Plaintiff returns to this Court to compel the agency to enforce the law.

## **JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because Plaintiff's claims arise under the laws of the United States, specifically the *Freedom of Information Act*.

2. This Court may grant relief pursuant to 5 U.S.C. § 552 (*Freedom of Information Act*).

3. This Court also has authority to grant relief under the *Declaratory Judgment Act* (28 U.S.C. § 2201).

4. Venue is proper in this Court under 5 U.S.C. § 552(a)(4)(B) because the agency records are situated in this District, and the agency may be sued in this District. Venue is also proper under U.S.C. § 1391(e)(1)(A) because Defendant resides in this District and a substantial portion of the events giving rise to this action occurred in this District. Specifically, Defendant's Immigrant Investor Program Office ("IPO") is located in Washington, D.C., and upon information and belief, all associated records are located there.

5. Plaintiff is deemed to have exhausted all administrative remedies because the agency "fail[ed] to comply with the applicable time limit provisions of [5 U.S.C. § 552(a)(6)(C)(i)]." 5 U.S.C. § 552(a)(6)(C)(i).

6. Declaratory relief is appropriate under 28 U.S.C. § 2201.

7. Injunctive relief is appropriate under 28 U.S.C. § 2202 and 5 U.S.C. § 552(a)(4)(B).

## PARTIES

8.  Plaintiff AIIA (http://goaiia.org) was founded in April 2021 as a Washington D.C.-based 501(c)(4) non-profit to inform, educate, and advocate on behalf of all EB-5 investors from around the world. As one of the only EB-5 focused organizations whose sole focus is on immigrant investors, AIIA strives to be an authoritative, investor-focused advocacy organization representing interests of all EB-5 investors regardless of their country of birth, adjudication status, or prior residency in the United States. When the EB-5 Regional Center program lapsed in June 2021 impacting the immigration process of over 80,000 individuals for several months, AIIA advocated for the grandfathering of all existing applicants and was successfully able to lobby Congress for the enactment of their grandfathering proposal in the EB-5 Reform and Integrity Act which passed in March 2022. Over 500+ EB-5 investors donated to support AIIA on that effort, and many continue to join the organization every day to advocate for this community and the issues that impact them. AIIA continues to advocate on behalf of investors in the legislative, administrative, and judicial branches, as well as investment spaces.

9.  Defendant USCIS is a U.S. government agency within the meaning of 5 U.S.C. § 552(f)(1). USCIS is a component of the Department of Homeland Security, an agency within the Executive Branch. Among other duties and responsibilities, USCIS is responsible for adjudicating EB-5 related benefits, as well as the formation and execution of related EB-5 policies and procedures. USCIS has the possession and control of the public records that Plaintiff has requested under the FOIA statute, and the duty to provide the same.

## STATUTORY FRAMEWORK

*EB-5 Program, I-526 Petitions, and Permanent Residency*

10. Congress created the EB-5 Program in 1990 to stimulate the U.S. economy through job

creation and capital investment by foreign investors. Generally, an EB-5 visa is available to a foreign national who invests the requisite amount of capital into a new commercial enterprise that creates 10 jobs for lawful American workers. 8 U.S.C. § 1153(b)(5).

11. To obtain an EB-5 Green Card, a foreign entrepreneur must endure three separate steps. First s/he must submit a Form I-526 Petition and supporting documentation demonstrating that the required capital has been committed and is actually at risk; that the investment is made from the entrepreneur's own lawfully acquired funds; and the existence of a comprehensive business plan demonstrating that ten full-time jobs will be created by the investment. 8 C.F.R. § 204.6(j).

12. Anyone can file a Form I-526 petition, regardless of backlogs. U.S. immigration law severely limits the number of immigrant *visas* that can be issued, but there is no numerical limit on the number of immigrant *petitions* that can be filed, thus fueling extensive visa backlogs.

13. Once an investor's Form I-526 Petition is approved, a foreign investor residing within the United States may submit a Form I-485 to adjust status to that of a conditional lawful permanent resident. If the investor is abroad, s/he will process through the local consulate having jurisdiction over the case. *See* 8 U.S.C. § 1186b(a)(1); 8 C.F.R. § 245.1(h).

14. Conditional permanent residency expires two years after its granting. 8 U.S.C. §§ 1186b(a)(1), (d)(2)(A). Near the end of two years of residency, the investor and his/her family must complete a third step to acquire full lawful permanent residency. *Id.* at §1186b(d)(2)(A).

*I-526/I-526E Petition Backlogs and Visa Availability*

15. The Visa Bulletin determines whether a visa is available, and subsequently, whether investors may submit their Forms I-485, or Forms DS-260 if applying abroad, based on an approved or pending Form I-526/I-526E. *See* U.S. Citizenship and Immigration Services, "Adjustment of Status Filing Charts from the Visa Bulletin" available at

4

https://www.uscis.gov/green-card/green-card-processes-and-procedures/visa-availability-priority-dates/adjustment-of-status-filing-charts-from-the-visa-bulletin (last accessed Jan. 17, 2024); U.S. Department of State, "The Visa Bulletin," available at https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin.html (last accessed Jan. 17, 2024).

16. If an investor's priority date, given at the time of filing the Form I-526/I-526E, is later than the relevant date shown on the Visa Bulletin, the investor must wait to submit Form I-485 or Form DS-260. *Id.* If the investor's priority date is earlier than the date shown on the Visa Bulletin, or the Visa Bulletin shows that category is "Current", then the investor may proceed with submitting Form I-485 or DS-260. *Id.* If a visa category becomes "oversubscribed", then investors will not be able to receive a visa even if they have already filed their Forms DS-260 or I-485.

17. Accordingly, the Visa Bulletin is used to determine whether a visa is available and may be issued to an I-526/I-526E petitioner. *See* U.S. Department of State, "Visa Bulletin for July 2023," available at https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2024/visa-bulletin-for-january-2024.html (last accessed Jan. 17, 2024) ("the listing of a date for any class indicates that the class is oversubscribed (see paragraph 1); "C" means current, i.e., numbers are authorized for issuance to all qualified applicants; and "U" means unauthorized, i.e., numbers are not authorized for issuance.).

18. But the Visa Bulletin's dates do not move forward linearly. Sometimes they do not move month to month at all. Sometimes the dates move backwards due to allegedly unanticipated demand, known as "visa retrogression." Thus, one cannot assume that because a date is current as of, for example, 12 years ago, this means that a current visa wait time is 12 years. For example, there is an approximate 12-year backlog for India-chargeable immigrants in the EB-2 advanced

degree category. But the actual wait time could be roughly twice as long as the modern Republic of India's existence. *See, e.g.,* Bier, David. "150-Year Wait for Indian Immigrants With Advanced Degrees" *available at* https://www.cato.org/blog/150-year-wait-indian-immigrants-advanced-degrees (last accessed Jan. 17, 2024).

19.  Following an alleged lapse, on March 18, 2022, the EB-5 Regional Center program was reauthorized by Congress, and the new *EB-5 Reform and Integrity Act* ("RIA") created new EB-5 immigrant visa set-asides, separating post- RIA filed EB-5 petitions into four different categories: 5th Unreserved, 5th Set Aside: Rural (20%), 5th Set Aside: High Unemployment (10%), and 5th Set Aside: Infrastructure (2%). 8 U.S.C. § 1153(b)(5).

20.  Subsequently, the Department of State separated I-526 petitions into four different categories on the Visa Bulletin. *See e.g.,* U.S. Department of State, "Visa Bulletin for July 2023," available at https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2023/visa-bulletin-for-july-2023.html (last accessed Jan. 17, 2024).

21.  This was a monumental development and sent EB-5 demand soaring in previously dormant countries. For example, some industry insiders had projected that P.R. China-chargeable investors filing in 2019 had a sixteen-year long wait for an EB-5 visa. See Francis, Laura D. "Sixteen-Year Visa Wait Keeping Chinese Investors Away From U.S." *available at* https://news.bloomberglaw.com/daily-labor-report/sixteen-year-visa-wait-keeping-chinese-investors-away-from-u-s (last accessed Jan. 17, 2024). Now, because of the new visa set-asides, new Chinese EB-5 investors were "Current", meaning they could obtain EB-5 Green Cards decades before their fellow Chinese investors that filed three years earlier.

22.  However, since March 2022, very little information has reached the public regarding the post-RIA EB-5 petition inventory. Following extensive backlogs which have accumulated in the

employment-based categories and EB-5 unreserved (mostly pre-RIA) category, current and incoming EB-5 investors have urgently sought out information about the number of petitions USCIS has received for the set aside categories.

23. Significantly, the Visa Bulletin does not indicate how many Forms I-526/I-526E have been filed. Without knowing the number of I-526/I-526E filings by country for the new set-aside categories, prospective investors from historically oversubscribed countries cannot judge their future visa availability and cannot choose to avoid exacerbating backlogs.

24. At the April 2023 EB-5 Stakeholder Engagement, Kevin Muck, the Division Chief at IPO, was asked about reporting I-526/I-526E receipt data by TEA category/country, for the purpose of monitoring and avoiding backlogs in the new TEA categories. *See* Lucid Professional Writing, "An Open Letter to Kevin Muck at IPO about I-526 data and avoiding EB-5 backlogs" (April 25, 2023), available at https://blog.lucidtext.com/2023/04/25/an-open-letter-to-kevin-muck-at-ipo-about-i-526-data-and-avoiding-eb-5-backlogs/ (last accessed Jan. 17, 2024). Mr. Muck responded that stakeholders should consult the Visa Bulletin and see that the current Visa Bulletin reports TEA categories as "current." *Id.* Not only does this evasive answer confuse the public about the function and methodology of the Visa Bulletin, but it sends a misleading message to investors about backlogs that start with I-526 filings.

25. This response from a **senior director** is unacceptable, as prospective EB-5 investors should be informed about the EB-5 backlogs, if any, building at USCIS in order to make informed decisions for their investment and immigration. As past EB-5 investors now stuck in retrogression know too well, even though a visa category may be current this month, it is not indicative of how many investors have I-526 petitions awaiting processing in USCIS storage facilities due to glacial processing times, triggering EB-5 retrogression.

26. Despite Mr. Muck's dismissive comments, such information is generally readily available and made public in other contexts. For example, USCIS recently published the number of Form I-140 (EB-1, 2, and 3), I-360 (EB-4), and pre- RIA I-526 approved employment-based petitions awaiting visa availability by preference category and country of birth as of March 2023. *See* U.S. Citizenship and Immigration Services, https://www.uscis.gov/sites/default/files/document/data/EB_I140_I360_I526_performancedata_FY2023_Q1_Q2.pdf (last accessed Jan. 17, 2024). Notwithstanding this data, USCIS put all four categories of the EB-5 preference category together. In other words, USCIS did not properly inform the public of the number of approved I-526 petitions awaiting visa availability because that data fails to take into account the different visa allocations based on the new law.

27. Moreover, upon information and belief, USCIS provides the U.S. Department of State (which publishes the Visa Bulletin) its pending and approved petition inventory on a monthly basis.

28. In any event, it does not appear that USCIS has ever publicly published the number of pending, post-RIA EB-5 petitions, at least outside of the outcome of the Initial Litigation.

29. EB-5 related filings are the most expensive in the entire U.S. immigration system. *See* Form G-1055, USCIS Fee Schedule, available at https://www.uscis.gov/g-1055 (last accessed Jan. 17, 2024).

30. It makes sense then that a user-funded agency complaining of low funding would seek to encourage as many high-priced filings as possible by obfuscating information that could diminish future demand.

31. USCIS' failure to respond to Plaintiff's FOIA and persistence in either holding back important information or posting information that fails to reflect current law and operations is bad

faith.

*FOIA*

32. Pursuant to 5 U.S.C. § 552(a)(3)(A), an agency is required to promptly make disclosable records available upon request.

33. An agency has twenty (20) business days from the day of receiving a request to determine whether to comply with the request and provide the reasons therefor. 5 U.S.C. § 552(a)(6)(A).

34. Under "unusual circumstances," an agency may request an extension of not more than ten business days to respond to the request. 5 U.S.C. § 552(a)(6)(B).

35. Thereafter, the agency is only permitted to withhold responsive records if the records fall under one of the nine enumerated exceptions in 5 U.S.C. § 552(b)(1)-(9).

36. If the agency makes a request to the requester for information or clarification, the twenty-day period may be tolled while it is awaiting such information. 5 U.S.C. § 552(a)(6)(A)(ii). The tolling period ends upon the agency's receipt of the requester's response to the agency's request for information or clarification. *Id.*

37. A FOIA requestor may request the district court "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).

## **FACTUAL ALLEGATIONS**

38. In the Initial Litigation, the Agency produced the information requested therein, without redactions.

39. Indeed, the Agency admitted in its Answer that there was public interest in the records requested. 1:23-cv-02066-CKK, ECF Doc. No 7.

40. Following the Initial Litigation, Plaintiff publicly posted the data provided by the Agency.

*See* https://goaiia.org/aiia-foia-series-526e-inventory-data-april23/ (last accessed Jan. 19, 2024).

41. On November 15, 2023, Plaintiff also produced a webinar about the data released, which received hundreds of views. See https://www.youtube.com/watch?v=r1fnwd6nUKo (last accessed Jan. 19, 2024). The webinar included a formal U.S. Department of State official who provided valuable interpretation of the data provided.

42. However, the information contained in the webinar was necessarily dated given Defendant's late response to the FOIA request at issue in the Initial Litigation.

43. Defendant continues to refuse to provide updated and detailed statistics vital to understanding EB-5 program demand.

44. Accordingly, on December 1, 2023, Plaintiff submitted a new FOIA request (the "Request") to Defendant. Plaintiff requested that Defendant provide a report of all I-526 and I-526E filings by month from April 1, 2022, to November 30, 2023, further itemized by TEA category (unreserved, rural, high unemployment, infrastructure) and country of chargeability (China, India, Vietnam, South Korea, Taiwan, Singapore, South Africa, Nigeria, Mexico, Brazil, Colombia, Chile, and rest of the world). Plaintiff included a fillable chart in which USCIS' could provide the requested information.

45. Plaintiff received correspondence dated December 1, 2023 ("the Letter") from Defendant confirming receipt of the Request on December 1, 2023. Defendant assigned the Request the control number COW2023008351.

46. The Letter confirmed that the Request was placed in the simple track (Track 1). Requests placed in the simple track "can be processed faster by the agency than one that is complex. Simple requests are typically more targeted and seek fewer pages of records." *FOIA.gov*, United States Department of Justice, available at https://www.foia.gov/faq.html (last accessed Jan. 17, 2024).

47.     Pursuant to 5 U.S.C. § 552(a)(6)(A), Defendant had twenty business days from the day of receiving Plaintiff's request to determine whether to comply with the request and provide the reasons therefor. However, Defendant invoked a 10-day extension to respond under 5 U.S.C. § 552(a)(6)(B).

48.     Therefore, Defendant's determination was due, at the latest, on January 17, 2024.

49.     It has been over 30 business days since Defendant received the Request. Defendant has not made a determination on Plaintiff's FOIA request or produced the requested documents.

## CAUSE OF ACTION

### COUNT I
### Violation of the Freedom of Information Act
### under 5 U.S.C. § 552(a)

50.     Plaintiff re-alleges all allegations contained herein.

51.     Defendant failed to make a determination, and provide the reasons therefor, on the Request in violation of 5 U.S.C. § 552(a)(6)(A).

52.     Defendant failed to produce any of the requested records in violation of 5 U.S.C. § 552(a).

53.     Defendant failed to provide any legal justification for its failure to comply with 5 U.S.C. § 552(a).

54.     Because Defendant has failed to meet the statutory deadlines, Plaintiff is deemed to have exhausted all administrative remedies under 5 U.S.C. § 552(a)(6)(C).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court:

A.     Declare that Defendant's failure to make determinations on Plaintiff's request and the subsequent withholding of the records requested is unlawful under the FOIA;

  B. Order Defendant to immediately produce and release the requested documents to Plaintiff by a date certain;

  C. Retain jurisdiction to ensure that Defendant provides Plaintiff all responsive records and that it lawfully and reasonably segregates portions of any exempt records sought in this action;

  D. Order USCIS to pay reasonable attorneys' fees pursuant to FOIA, the *Equal Access to Justice Act*, and/or any other provisions of law; and

  E. Enter and issue other relief that this Court deems just and proper.

January 19, 2024            Respectfully submitted,

                 /s/ Matthew Tony Galati
                 MATTHEW TONY GALATI
                 The Galati Law Firm
                 8080 Old York Rd.
                 Suite 225
                 Elkins Park, PA 19027
                 Telephone: (215) 309-1728
                 E-mail: matt@galati.law
                 D.D.C. Bar No. PA0093

                 *Attorney for Plaintiff*